Electronically Filed
Intermediate Court of Appeals
30700
07-MAR-2014
07:50 AM

NO. 30700

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

GERARDO DENNIS PATRICKSON; RODOLFO BERMUNDEZ ARIAS;
BENIGNO TORRES HERNANDEZ; FERNANDO JIMENEZ ARIAS; MELGAR
OLIMPIO MORENO; SANTOS LEANDROS; HERMAN ROMERO AGUILAR; ELIAS
ESPINOZA MERELO HOOKER ERA CELSTINO; ALIRIO MANUEL MENDEZ;
and CARLOS HUMBER RIVERA, individually and on behalf
of others similarly situated, Plaintiffs-Appellants,
v.
DOLE FOOD COMPANY, INC.; DOLE FRESH FRUIT COMPANY; DOLE FRESH
FRUIT INTERNATIONAL, INC.; PINEAPPLE GROWERS ASSOCIATION
OF HAWAII; AMVAC CHEMICAL CORPORATION; SHELL OIL COMPANY;
DOW CHEMICAL COMPANY; and OCCIDENTAL CHEMICAL CORPORATION,
(individually and as successor to Occidental Chemical Company
and Occidental Chemical Agricultural Products, Inc., Hooker
Chemical and Plastics, Occidental Chemical Company of Texas
and Best Fertilizer Company); STANDARD FRUIT COMPANY; STANDARD
FRUIT AND STEAMSHIP COMPANY; STANDARD FRUIT COMPANY DE COSTA
RICA, S.A.; STANDARD FRUIT COMPANY DE HONDURAS, S.A.; CHIQUITA
BRANDS INC.; CHIQUITA BRANDS INTERNATIONAL, INC., (Individually
and as successor in interest to United Brands Company, Inc.);
MARITROP TRADING CORPORATION; DEL MONTE FRESH PRODUCE N.A., INC.
(incorrectly named as Del Monte Fresh Produce N.A.); DEL MONTE
MONTE FRESH PRODUCE COMPANY; DEL MONTE FRESH PRODUCE (HAWAII)
INC., (incorrectly named as Del Monte Fresh Produce Hawaii,
Inc.); DEL MONTE FRESH PRODUCE COMPANY and FRESH DEL MONTE N.V.,
Defendants-Appellees,
and
JOHN DOES 1-10; JANE DOES 1-10; DOES PARTNERSHIPS 1-10;
and DOE CORPORATIONS 1-10, Defendants.

DOLE FOOD COMPANY, INC., Defendant/Third-Party Plaintiff-
Appellees, v. DEAD SEA BROMINE CO., LTD. and BROMINE COMPOUNDS
LIMITED, Third-Party Defendants-Appellees.

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 07-1-0047)

MEMORANDUM OPINION
(By: Foley, Presiding Judge, Leonard and Ginoza, JJ.)

Plaintiffs-Appellants Gerardo Dennis Patrickson, Benigno Torres Hernandez, Fernando Jimenez Arias, Elias Espinoza Merelo, Alirio Manuel Mendez, and Carlos Humberto Rivera[1] (collectively Six Plaintiffs) appeal from the July 28, 2010 Judgment in favor of defendants and against plaintiffs (Judgment) filed in the Circuit Court of the First Circuit (First Circuit Court).[2]

In this appeal, we consider whether the claims asserted by the Six Plaintiffs are barred by Hawaii's two-year statute of limitation for tort actions or whether a class action pending in another jurisdiction tolls the statute of limitation. We also consider whether the Six Plaintiffs have asserted claims for which a four-year or six-year statute of limitation applies, such that those claims are timely.

For the reasons discussed below, we affirm.

I.    **Introduction**

The Six Plaintiffs are citizens of the countries of Costa Rica, Ecuador or Guatamala. They contend that they were harmed from exposure to dibromochloropropane (DBCP) which was allegedly used or manufactured from the 1960s through the 1980s by Defendants-Appellees Dole Food Company, Inc., Dole Fresh Fruit Company, Pineapple Growers Association of Hawaii, AMVAC Chemical Corporation, Shell Oil Company, Dow Chemical Company, Occidental Chemical Corporation, Standard Fruit Company, Standard Fruit and Steamship Company, Del Monte Fresh Produce N.A., Inc., and Del Monte Fresh Produce (Hawaii) Inc. (collectively Defendants).[3]

---

[1]  Five additional plaintiffs were named in the original complaint filed on October 3, 1997, but their claims were subsequently dismissed by stipulation on October 8, 2009 and October 9, 2009.

[2]  The Honorable Gary W.B. Chang presided.

[3]  Nine additional defendants were named in the original complaint filed on October 3, 1997. The following originally named defendants were all dismissed by stipulations filed in 2007 and 2008: Dole Fresh Fruit International, Inc., Dole Fresh Fruit International, Limited, Standard Fruit
(continued...)

2

DBCP was used to kill nematodes, which are worms that attack banana plant roots. The Six Plaintiffs contend that they were exposed to DBCP while employed by American fruit companies or their subsidiaries in the commercial cultivation of bananas for sale in the United States. They further contend that DBCP has been banned from use in the United States and allegedly causes sterility, sexual and reproductive abnormalities, and cancer.[4]

In this appeal, the Six Plaintiffs assert that the First Circuit Court erred when it granted Defendant Dow Chemical Company's (Dow Chemical) and Defendant Shell Oil Company's (Shell Oil) respective motions for partial summary judgment, and the other Defendants' susbstantive joinders thereto, based on the two-year statute of limitations for tort claims under Hawaii Revised Statutes (HRS) § 657-7 (1993). The First Circuit Court granted the motions and joinders to the extent they were based on Dow Chemical's motion, which asserted that, more than two years before filing this action, the Six Plaintiffs were among numerous plaintiffs who had filed individual claims in a Florida lawsuit, Abarca, v. CNK Disposition Corp., No. 95-3765 (13th Jud. Cir. of Hillsborough Cnty., Fla., filed June 9, 1995) (the Abarca action), that were similar to those asserted in this case. Dow Chemical's motion thus argued that, at least by the time they filed the Abarca action, the Six Plaintiffs were well aware of their claims and therefore the claims asserted in this action -- filed more than two years later -- are time barred by HRS § 657-7.

---

[3] (...continued)
Company De Costa Rica, S.A., Standard Fruit Company De Honduras, S.A., Chiquita Brands, Inc., Chiquita Brands International, Inc., Maritrop Trading Corporation, Del Monte Fresh Produce Company, and Fresh Del Monte Produce N.V. (incorrectly named as Fresh Del Monte N.V.).

[4] Referring to DBCP, the Ninth Circuit Court of Appeals (Ninth Circuit) stated: "Absorbed by the skin or inhaled, [DBCP is] alleged to cause sterility, testicular atrophy, miscarriages, liver damage, cancer and other ailments that you wouldn't wish on anyone. Originally manufactured by Dow Chemical and Shell Oil, the pesticide was banned from general use in the United States by the Environmental Protection Agency in 1979." Patrickson v. Dole Food Co., 251 F.3d 795, 798 (9th Cir. 2001) aff'd in part, cert. dismissed in part, Dole Food Co. v. Patrickson, 538 U.S. 468 (2003).

The Six Plaintiffs argued in opposition to Dow Chemical's motion, and similarly contend on appeal, that they were putative members of a class action lawsuit filed in Texas state court that asserted similar claims, Carcamo v. Shell Oil Company, No. 93-C-2290, 23rd Jud. Dist. of Brazoria Cnty., Tex. (Carcamo), that the statute of limitations for their claims was thus tolled until class certification was denied in Carcamo, and therefore their complaint in this case is timely. The Six Plaintiffs also argue that they have asserted claims in this case for fraud and negligent misrepresentation, which are subject to a six-year statute of limitations, and that they have also asserted an implied warranty claim which is subject to a four-year statute of limitation, such that these claims are timely.

This appeal therefore presents the following questions:

(1) whether the Carcamo class action lawsuit pending in another state tolled the statute of limitations for the Six Plaintiffs, who were putative members of the Carcamo class, such that this action was timely filed; and

(2) if class action tolling does not save their claims, whether the Six Plaintiffs have asserted causes of action for which a four-year or six-year statute of limitation applies, such that those claims were timely asserted in this case.

We hold that class action tolling does not save the Six Plaintiffs' claims from being untimely. Moreover, the only claim asserted by the Six Plaintiffs with a statute of limitations longer than two years is their claim for breach of implied warranty. However, even the breach of implied warranty claim is untimely.

II. **Procedural History In This Case and the Related Cases**

A. **Identifying the Cases**

To give context to the class action tolling issues, we set forth the relevant procedural history not only in this case, but also in the Carcamo class action and the Abarca action. As explained in fuller detail below, Carcamo was filed in August 1993, Abarca was filed in June 1995, and this case was filed in

4

October 1997. These cases are interrelated for a variety of reasons and have each been before respective state and federal courts.

We further note that, for a period of time, Carcamo was consolidated with other similar cases which had all been removed to federal court in Texas and which were consolidated under Delgado v. Shell Oil Co., No. H-94-1337 (212th Dist. Ct., Galveston Cnty., Tex.) (generally Delgado). There were two published opinions issued by the federal courts in Delgado: one by the District Court for the Southern District of Texas in Delgado v. Shell Oil Co., 890 F. Supp. 1324 (S.D. Tex. 1995) (Delgado I); and the second by the Fifth Circuit Court of Appeals in Delgado v. Shell Oil Co., 231 F.3d 165 (5th Cir. 2000) (Delgado II).[5]

### B. Carcamo, Delgado, and Abarca

The Carcamo case was initiated on August 24, 1993 in Texas state court. Based on the undisputed evidence in this case, at least as of the Fourth Amended Petition filed on November 22, 1993 in Carcamo, the plaintiffs in that case asserted a class action on behalf of:

> [a]ll persons exposed to DBCP, or DBCP-containing products, designed, manufactured, marketed, distributed or used by defendants between 1965 and 1990 in the following countries: (1) Honduras, (2) Costa Rica, (3) Guatemala, (4) Ivory Coast, (5) Burkina Faso, (6) Dominica, (7) St. Lucia, (8) St. Vincent, (9) Ecuador, (10) Philippines, and (11) Australia. Excluded from the class are 30 DBCP cases to be selected from cases currently pending in Brazoria, Dallas, Galveston, Jim Hogg, and Morris counties in Texas.

The parties do not dispute that the Six Plaintiffs were putative class members in the Carcamo class action.[6]

---

[5] We are mindful that we are reviewing a grant of partial summary judgment. Therefore, the relevant facts set forth in this opinion are based on the record developed by the parties below and, pursuant to Hawai'i Rules of Evidence (HRE) 201, relevant facts of which we take judicial notice based on the published opinions in Delgado.

[6] The Six Plaintiffs and Dow Chemical entered an express stipulation that the Six Plaintiffs were putative class members in the Carcamo class action.

In 1994, the Carcamo class action was removed to a federal district court in Texas after a third-party complaint was filed against *inter alia* an Israeli company, Dead Sea Bromine Co., Ltd. (Dead Sea). After being removed to federal district court, Carcamo was consolidated in Delgado with several other lawsuits pending in Texas federal courts in which plaintiffs had similarly asserted claims stemming from exposure to DBCP.

While Delgado was pending in federal court, the Six Plaintiffs were among 3,307 plaintiffs who filed individual claims in the Abarca action. The complaint in Abarca was filed on June 9, 1995 in Florida state court. The Six Plaintiffs contend that the Abarca complaint was filed as a defensive measure in "response to the Delgado defendants' efforts to persuade the Delgado federal court in Texas to enjoin the litigation of any further DBCP cases anywhere in the United States." The Abarca complaint was never served on any defendant, but was removed to federal court on July 7, 1995. The Abarca action was voluntarily dismissed on July 12, 1995 -- a little over a month after it was filed and one day after Delgado I was issued.

In Delgado I, the District Court for the Southern District of Texas determined that it had jurisdiction because under the Foreign Sovereign Immunities Act (FSIA), Dead Sea could properly remove the action to federal court. The court in Delgado I then conditionally granted defendants' motion to dismiss based on *forum non conveniens*. Id. at 1373. Importantly, the district court further noted that, in addition to the defendants' motion to dismiss for *forum non conveniens*, a number of other motions were pending in various cases, including Carcamo. Delgado I, 890 F.Supp. at 1375. The district court thus held, *inter alia*, that unless otherwise expressly addressed in its decision, all pending motions were denied as moot. Id. Our record establishes that a motion for class certification was pending in Carcamo prior to the Delgado I decision and that Delgado I did not otherwise expressly address that motion.

6

*Therefore, upon the issuance of the decision in Delgado I on July 11, 1995, the motion for class certification in Carcamo was denied as moot.*[7]

The plaintiffs appealed Delgado I to the Fifth Circuit Court of Appeals. On October 19, 2000, the Fifth Circuit issued Delgado II, which affirmed Delgado I, including that the actions were properly removed to federal court.

By the time Delgado II was issued, this case had been filed in Hawaiʻi state court[8] and, similar to Delgado, had been removed to federal court after Dead Sea and a related Israeli company were impleaded into the case. After the District Court for the District of Hawaiʻi dismissed this case for *forum non conveniens*, the Ninth Circuit Court of Appeals ruled (contrary to the Fifth Circuit) that the case was not properly removed and that the federal courts did not have jurisdiction. Patrickson v. Dole Food Co., 251 F.3d 795, 808-09 (9th Cir. 2001). The U.S. Supreme Court granted *certiorari* in this case and subsequently affirmed the Ninth Circuit, ruling that there was no jurisdiction under the FSIA because the Israeli companies were not instrumentalities of the State of Israel. Dole Food Co. v. Patrickson, 538 U.S. 468, 480 (2003).

---

[7] The Six Plaintiffs argue on appeal that it is unclear whether the motion for class certification in Carcamo was indeed pending when Delgado I was issued. However, the declaration of Michael Brem, counsel for Dow Chemical in the Carcamo case, was submitted in this case and establishes that a motion for class certification was pending in Carcamo and was not ruled upon until it was denied on July 11, 1995 by the district court judge in Delgado I. There is nothing in the record to dispute this fact.

[8] In this case, the Ninth Circuit stated that:

> This case represents one front in a broad litigation war between these plaintiffs' lawyers and these defendants. In some of the cases, plaintiffs have reportedly won multimillion dollar settlements. *See* Larry K. Lowry & Arthur L. Frank, *Exporting DBCP and Other Banned Pesticides: Consideration of Ethical Issues*, 5 Int'l J. Occup. Envtl. Health 135, 140 (1999). In others, defendants have managed to have the cases dismissed for forum non conveniens. *See, e.g.*, Delgado v. Shell Oil Co., 231 F.3d 165, 169 (5th Cir. 2000), *cert. denied*, 532 U.S. 972, 121 S.Ct. 1603, 149 L.Ed.2d 470 (2001); Sibaja v. Dow Chem. Co., 757 F.2d 1215, 1216 (11th Cir. 1985).

Patrickson v. Dole Food Co., 251 F.3d at 798.

Following the U.S. Supreme Court's ruling in this case, which resolved the split between the Fifth and Ninth Circuits regarding federal jurisdiction under the FSIA, the federal District Court for the Southern District of Texas remanded Carcamo to Texas state court and reinstated the case. The defendants in Carcamo challenged the reinstatement of the case, filing a petition for writ of mandamus in the 14th Court of Appeals of Texas in 2005. The Texas appellate court denied the defendants' challenge to reinstatement, holding that because of the U.S. Supreme Court's ruling on jurisdiction in Patrickson, the federal court lacked subject matter jurisdiction when it issued its dismissal on *forum non conveniens* and thus the requirements imposed by that order were void.

On February 2, 2006, the plaintiffs in Carcamo filed their Eighth Amended Petition reasserting class allegations against the defendants in that case. Although not established in the record, the Six Plaintiffs assert that on June 3, 2010, the Texas state court denied the plaintiffs' motion for class certification in Carcamo.

The Six Plaintiffs contend that, based on class action tolling, the statute of limitations for the claims they assert in this case was tolled until June 3, 2010, when, as the Six Plaintiffs assert on appeal, the class certification was denied by the Texas state court in Carcamo. This would make their complaint in this case timely because it was filed thirteen years earlier, on October 3, 1997.

C.   **Procedural History in This Case**

The Six Plaintiffs were among eleven plaintiffs who filed this action in Hawaii's Circuit Court of the Second Circuit (Second Circuit Court) on October 3, 1997.

As discussed above, this case was removed to federal court after Dead Sea and a related Israeli company were impleaded, and the case made its way through the federal district and appellate courts. After the ruling by the U.S. Supreme Court on April 22, 2003, that there was no federal jurisdiction, this

case was remanded to Hawaii's Second Circuit Court on September 19, 2003. In December 2006, the Second Circuit Court transferred venue to the state's First Circuit Court.

Pursuant to an Order Rehabilitating the Circuit Court Record, the Six Plaintiffs submitted a copy of their First Amended Complaint to the First Circuit Court on February 1, 2008. The First Amended Complaint asserts claims of negligence, conspiracy, strict liability, intentional tort, and breach of implied warranty, and seeks compensatory and punitive damages. On February 25, 2008, the Six Plaintiffs filed a Motion for Class Certification and Appointment of Class Representatives and Class Counsel, which was denied.

Subsequently, Defendants Dow Chemical and Shell Oil filed their respective motions for partial summary judgment which are the subject of this appeal. The other Defendants joined Dow's motion for partial summary judgment. After extensive briefing and a combined hearing on the motions, the First Circuit Court granted summary judgment against the Six Plaintiffs and in favor of the Defendants.

On July 28, 2010, the First Circuit Court filed the Judgment in favor of Defendants and against the Six Plaintiffs in accordance with its summary judgment rulings. The Six Plaintiffs timely appealed on August 24, 2010.

## III. Standard of Review

We review a circuit court's grant or denial of summary judgment *de novo*. Querubin v. Thronas, 107 Hawai'i 48, 56, 109 P.3d 689, 697 (2005). Accordingly,

> [S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and inferences

9

> drawn therefrom in the light most favorable to the
> party opposing the motion.
>
> *Kahale v. City and County of Honolulu*, 104 Hawaiʻi 341, 344,
> 90 P.3d 233, 236 (2004) (citation omitted).

Nuuanu Valley Ass'n v. City & Cnty. of Honolulu, 119 Hawaiʻi 90,
96, 194 P.3d 531, 537 (2008).

## IV. Discussion

The Six Plaintiffs were party to the Abarca action
which was filed on June 9, 1995 and which asserted claims similar
to this case. The original complaint in this case was filed on
October 3, 1997, more than two years after Abarca was filed. The
Six Plaintiffs do not dispute that they were aware of their
claims in this action by the time they filed the Abarca action.
Rather, they opposed summary judgment on grounds that the statute
of limitations was tolled given the Carcamo class action.
However, even if we assume class action tolling applies in this
case, it would not save any claims for which a two-year statute
of limitations applies, because any tolling ended when Delgado I
was issued on July 11, 1995.

### A. Class Action Tolling

Class action tolling has been recognized in Hawaiʻi in
a situation where the class action was also filed in this State.
In Levi v. University of Hawaii, 67 Haw. 90, 679 P.2d 129 (1984),
a class action lawsuit was filed in Hawaiʻi and after a motion
for class certification was denied, putative members filed
motions to intervene in the case but their motions were denied.
Id. at 91-92, 679 P.2d at 130-31. The putative class members
then filed a separate action, but the trial court granted summary
judgment against the plaintiffs on grounds that the statute of
limitations had run. Id. at 92, 679 P.2d at 131.

In Levi, the Hawaiʻi Supreme Court held that the filing
of the class action lawsuit "tolled the applicable statute of
limitations for all proposed members of that class until class
certification was denied." Id. at 91, 679 P.2d at 130. The
supreme court adopted the rule established by the U.S. Supreme
Court in American Pipe & Construction Co. v. Utah, 414 U.S. 538

(1974) and <u>Crown, Cork & Seal Company v. Parker</u>, 462 U.S. 345 (1983), and explained its analysis as follows:

> The primary purpose of a statute of limitations is to compel the exercise of a right of action within a reasonable time so that the opposing party has a fair opportunity to defend. 51 Am. Jur. 2d *Limitations of Actions* § 17. The filing of a class action within the statute of limitations places a defendant on notice of the subject matter and size of the prospective litigation. Defendant is thereby apprised of the possible number of litigants and should not be rewarded for lack of diligence in seeking denial of certification.
>
> One of the purposes of a class action suit is to prevent multiplicity of actions, thereby preserving the economies of time, effort and expense. This objective can be effectively achieved only by allowing the proposed members of a class to rely on the existence of a suit which protects their rights. We therefore adopt the rule enunciated in *American Pipe and Construction Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), and clarified in *Crown, Cork and Seal Co., Inc. v. Parker*, 462 U.S. 345, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983) which states that the commencement of a class action suspends the applicable statute of limitations as to all asserted members of a class who would have been parties had the suit continued as a class action. To hold otherwise would be to encourage intervention and filings of separate actions in the event class certification might be denied, thus creating the multiplicity of actions that class suits were designed to avoid.
>
> The United States Supreme Court decision of *Crown, Cork* was designed to alleviate the inconsistent results which arose in federal courts after the *American Pipe* decision. Some courts had been applying the tolling rule only to putative class members who intervened after denial of class certification and not to those who filed individual actions. The Supreme Court granted certiorari to resolve the conflict and in *Crown, Cork* extended the tolling provisions to all asserted members of the class, until class certification is denied.

<u>Levi</u>, 67 Haw. at 93-94, 679 P.2d at 131-32 (footnote omitted).

The Six Plaintiffs contend that because they were putative class members in the <u>Carcamo</u> action, the statute of limitations for their claims was tolled until 2010, when they claim the Texas state court denied a motion for class certification on remand in <u>Carcamo</u>. As we noted above, the record does not appear to contain evidence of a <u>Carcamo</u> class certification ruling in 2010. Moreover, as explained below, any such ruling in 2010 would not be relevant.

Defendants assert the following arguments related to class action tolling: (a) once the motion for class certification

in Carcamo was denied as moot in Delgado I, any class action tolling ended and the statute of limitations began to run; (b) Hawai'i should not recognize class action tolling where the class action is filed in another jurisdiction, what Defendants refer to as "cross-jurisdictional" tolling; (c) the Six Plaintiffs' filing of individual claims in the Abarca action precluded application of class action tolling; and (d) class action tolling does not apply to mass tort class actions.

We need not go beyond the Defendants' first contention because it is dispositive of the class action tolling issue in this case. That is, even if we assume arguendo that class action tolling applies in the context of this case, such tolling ended when Delgado I was issued on July 11, 1995, because that decision denied a pending motion for class certification in Carcamo as moot. The initial complaint in this case was not filed until October 3, 1997, more than two years later. Thus, any claims to which the two-year limitations period applies under HRS § 657-7 would be barred regardless of whether class action tolling applies.

In Levi, the Hawai'i Supreme Court noted that in Crown, Cork & Seal Company, the U.S. Supreme Court "extended the tolling provisions to all asserted members of the class, until class certification is denied." Levi, 67 Haw. at 94, 679 P.2d at 132 (emphasis added). Indeed, in Crown, Cork & Seal Company, the U.S. Supreme Court stated that

> [w]e conclude, as did the Court in American Pipe, that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." 414 U.S., at 554, 94 S.Ct., at 766. Once the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied. At that point, class members may choose to file their own suits or to intervene as plaintiffs in the pending action.

462 U.S. at 353-54 (emphasis added).

The Six Plaintiffs contend that the denial of class certification in Delgado I should not end the tolling because the Texas state court later held that the proceeding before the

12

federal district court in <u>Delgado I</u> was void for lack of jurisdiction.  As noted above, however, both the district court and the Fifth Circuit ruled that the federal courts had jurisdiction in <u>Delgado</u>.  Moreover, the U.S. Supreme Court denied a petition for certiorari in <u>Delgado</u>.  <u>Delgado v. Shell Oil Co.</u>, 532 U.S. 972 (2001).  The issue of federal court jurisdiction under the FSIA was later definitively addressed in *this case* when the U.S. Supreme Court issued its ruling in April 2003, almost eight years after class certification was denied in <u>Delgado I</u>.  See <u>Dole Food Co. v. Patrickson</u>, 538 U.S. 468.

More importantly, <u>American Pipe</u>, <u>Crown, Cork & Seal Company</u> and <u>Levi</u> provide no indication that the jurisdiction of the court denying class certification might affect whether tolling ends.  In fact, the underlying analysis supporting class action tolling in these cases does not support the idea that, after class certification is denied by a trial court, tolling should continue during the appellate process or while an issue of jurisdiction is litigated.  In balancing the purposes behind class actions and statutes of limitations, the U.S. Supreme Court and the Hawai'i Supreme Court articulated, *inter alia*, that a timely filed class action prevents a multiplicity of lawsuits by allowing putative class members to rely on the class action without having to file separate actions, yet puts a defendant on notice of the subject matter and size of the litigation, such that the defendant has a fair opportunity to defend.[9]  <u>Am. Pipe</u>, 414 U.S. at 553-55; <u>Crown, Cork & Seal Co.</u>, 462 U.S. at 351-53; <u>Levi</u>, 67 Haw. at 93, 679 P.2d at 131-32.  Once class certification is denied, "[a]t that point, class members may choose to file their own suits or to intervene as plaintiffs in the pending action."  <u>Crown, Cork & Seal Co.</u>, 462 U.S. at 354.

---

[9]  Because notice to the defendant of the claim is one of the underlying rationales supporting class action tolling, such tolling does not apply to claims against a Defendant who was not previously named as a defendant in <u>Carcamo</u>.  From the record, it appears that Defendants Pineapple Growers Association of Hawaii, AMVAC Chemical Corporation, Del Monte Fresh Produce N.A., Inc., and Del Monte Fresh Produce (Hawaii) Inc. were not named as defendants in <u>Carcamo</u>, and thus for this additional reason any tolling does not apply to claims against these Defendants.

A number of federal court decisions support the proposition that class action tolling should not continue beyond the initial denial of class certification by the trial court. Giovanniello v. ALM Media, LLC, 726 F.3d 106, 116 (2d Cir. 2013); Hall v. Variable Annuity Life Ins. Co., 727 F.3d 372, 375-76 (5th Cir. 2013); Bridges v. Dep't of Maryland State Police, 441 F.3d 197, 211 (4th Cir. 2006) ("Crown, Cork & Seal adopted the bright-line rule that the statute of limitations 'remains tolled for all members of the putative class until class certification is denied' for whatever reason." (citation omitted)); Stone Container Corp v. United States, 229 F.3d 1345, 1355-56 (Fed. Cir. 2000); Hemenway v. Peabody Coal Co., 159 F.3d 255, 265-66 (7th Cir. 1998) (dismissal of class action for lack of jurisdiction ended tolling in state with journeys account statute); Armstrong v. Martin Marietta Corp., 138 F.3d 1374, 1384-85 (11th Cir. 1998); Nelson v. Cnty. of Allegheny, 60 F.3d 1010, 1013 (3d Cir. 1995) (determining that under Pennsylvania law, tolling does not extend to appeal); Andrews v. Orr, 851 F.2d 146, 149-50 (6th Cir. 1988), abrogated on other grounds by Cook v. Stegall, 295 F.3d 517 (6th Cir. 2002).

In Giovanniello, the Second Circuit Court of Appeals recently stated that "we join every other circuit court to have addressed the issue and conclude that the tolling rule announced in [American Pipe] extends only through the denial of class status in the first instance by the district court." 726 F.3d at 107-08 (emphasis added). Addressing whether a subsequently filed case was timely, the Giovanniello court stated:

> Although the possibility of reconsideration or reversal on appeal existed, Giovanniello is incorrect that this rendered the district court's decision "provisional." Indeed, we agree with the district court that "[a]fter a district court's determination of whether an action may be maintained as a class action, the class is no longer putative: having been subjected to a legal decision, the class is either extant or not." For this very reason, the Court in Crown, Cork recognized that once class status is denied, "class members may choose to file their own suits or to intervene as plaintiffs in the pending action." Crown, Cork, 462 U.S. at 354, 103 S.Ct. 2392. If the Court had contemplated that tolling continued through the pendency of reconsideration or through appeal, there would be no need for class members to take action to protect their rights as the Court in Crown,

14

> *Cork* explained. Thus, once Giovanniello's attempt to secure class status failed, the statute of limitations began to run again.

Id. at 117 (internal citation omitted).

Giovanniello is also significant in that class status had been effectively denied in the prior class action when the district court determined that the required amount in controversy for federal jurisdiction could not be met and therefore the class action was dismissed for lack of subject matter jurisdiction. Giovanniello, 726 F.3d at 108. In short, even though the district court in the class action suit had determined it did not have subject matter jurisdiction, this did not diminish the impact that the court had effectively denied class status, which in turn ended any class action tolling. See also Hemenway, 159 F.3d at 265-66.

Given the above analysis and the circumstances of this case, all claims asserted by the Six Plaintiffs that have a two-year statute of limitations are time barred. The Abarca action establishes that the Six Plaintiffs were aware of their claims at least by June 9, 1995, when the Abarca complaint was filed. Moreover, even if we assume that class action tolling applied, such tolling ended on July 11, 1995, when Delgado I was issued, and the complaint in this case was filed more than two years later, on October 3, 1997. The two-year statute of limitations under HRS § 657-7 precludes a significant portion of the Six Plaintiffs' claims.

We address below the Six Plaintiffs' contention that they have asserted three claims to which a longer statute of limitations applies.

**B. Claims of Fraudulent Misrepresentation, Negligent Misrepresentation and Breach of Implied Warranty**

The Six Plaintiffs contend that, although their claims are not specifically styled as such, they have sufficiently asserted claims for fraudulent and negligent misrepresentation, to which a six-year statute of limitations applies. The Six Plaintiffs also contend that their claim for breach of implied

warranty survives because a four-year statute of limitations applies to that claim.

### 1. Purported Claims for Fraudulent and Negligent Misrepresentation

Because the First Amended Complaint does not contain express claims for fraudulent misrepresentation or negligent misrepresentation, the parties contest whether such claims were indeed sufficiently plead by the Six Plaintiffs. We conclude that, regardless of whether fraudulent misrepresentation or negligent misrepresentation claims can be sufficiently gleaned from the First Amended Complaint, the nature of the Six Plaintiffs' claims seek "recovery of compensation for damage or injury to persons[,]" and thus the two-year statute of limitations under HRS § 657-7 applies.

"The proper standard to determine the relevant limitations period is the nature of the claim or right, not the form of the pleading. The nature of the right or claim is determined from the allegations contained in the pleadings." Au v. Au, 63 Haw. 210, 214, 626 P.2d 173, 177 (1981) (citations omitted). The "preliminary statement" at the beginning of the First Amended Complaint summarizes that the action was brought because the Six Plaintiffs "have had their health, welfare, and lives damaged" as a result of exposure to DBCP and they seek "to recover compensation for damages to their health, welfare, and lives that resulted from the injuries caused by the Defendants." Moreover, the allegations as to "compensatory damages" sought in the First Amended Complaint underscore and detail that the Six Plaintiffs seek compensation for a variety of personal injuries. Unlike in Au, where the nature of the claims was fraudulent representations which induced the plaintiff to purchase a damaged home, 63 Haw. at 216-17, 626 P.2d at 179, here the nature of the claims is that the health and welfare of the Six Plaintiffs themselves have directly been damaged by the Defendants.

Thus, we reject the Six Plaintiffs' arguments that they have asserted timely claims for fraudulent and negligent misrepresentation.

### 2. Breach of Implied Warranty Claim

The First Amended Complaint does expressly assert a breach of implied warranty claim. This claim alleges that "Defendants impliedly warranted that their DBCP-containing products were of good and merchantable quality and fit for their intended use[,]" Defendants "knew or ought to have reasonably anticipated" that Six Plaintiffs would work in close proximity to DBCP-containing products, and "Defendants breached their implied warranty that their DBCP products were of good and merchantable quality and were fit for their particular intended use by causing the Plaintiffs' exposure to DBCP[.]"

We agree with the Six Plaintiffs that, based on the allegations in the First Amended Complaint, their implied warranty claim is subject to the four-year statute of limitations in the Uniform Commercial Code (UCC) set out in HRS § 490:2-725 (2008).[10] Although Defendants contend that the UCC does not apply because it is limited to transactions in goods between buyers and sellers, HRS § 490:2-318 (2008) extends seller warranties to third-party beneficiaries, stating that "[a] seller's warranty whether express or implied extends to any person who may reasonably be expected to use, consume or be

---

[10] HRS § 490:2-725 provides in relevant part:

> §490:2-725 Statute of limitations in contracts for sale. (1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.
> (2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

17

affected by the goods and who is injured by breach of the warranty."  The allegations in the First Amended Complaint sufficiently assert that the Six Plaintiffs are third party beneficiaries of seller warranties relating to DBCP.

Moreover, although the implied warranty claim seeks compensation for personal injuries (like all of the claims asserted in the First Amended Complaint), the four-year statute of limitations in HRS § 490:2-725 applies, rather than the two-year limitations period under HRS § 657-7.  In Larsen v. Pacesetter Systems, Inc., 74 Haw. 1, 837 P.2d 1273 (1992), a husband and wife asserted an implied warranty claim against a pacemaker manufacturer and were awarded damages due to surgeries the husband underwent to remove and replace a pacemaker.  Id. at 7, 837 P.2d at 1278.  The Hawai'i Supreme Court rejected the defendant's argument that the two-year statute of limitations for personal injury actions applied in that case, and instead held that the four-year statute of limitations under HRS § 490:2-725 applied.  The court explained:

> Given the plain language of the UCC, as well as our decision in Ontai v. Straub Clinic & Hosp., Inc., 66 Haw. 237, 249-52, 659 P.2d 734, 743 (1983) (Under § 490:2-318, patient Ontai could bring an action as a third party beneficiary of implied warranty running between General Electric, manufacturer of the X-ray table, and Straub hospital), it is difficult to imagine how the UCC statute of limitations would not apply to plaintiff's implied warranty claim.

Id. at 11, 837 P.2d at 1280.  Here, the breach of implied warranty claim is asserted against all Defendants and there is no evidence in the record to determine at this point which of the Defendants were, or were not, sellers of DBCP.

Defendants further contend, however, that pursuant to HRS § 490:2-725(2), the claim for breach of implied warranty accrued with the "tender or delivery" of the DBCP product, and that the First Amended Complaint specifically alleges that "Defendants used DBCP from approximately the 1960's until the mid-1980's."  (Emphasis added).  Defendants assert that, if the last tender of delivery of DBCP was in the mid-1980's, the implied warranty claim is untimely even under the four-year

18

statute of limitations in HRS § 490:2-725 because this action was not filed until October 1997.

The Six Plaintiffs respond that the statute of limitations for their breach of implied warranty claim is tolled based on the discovery rule. However, they offer no authority that the discovery rule applies to a breach of implied warranty claim. Moreover, HRS § 490:2-725(2) specifically provides that "[a] cause of action accrues when the breach occurs, <u>regardless of the aggrieved party's lack of knowledge of the breach</u>." (Emphasis added).

The Six Plaintiffs further respond that their implied warranty claim is tolled based on the Defendants' fraudulent concealment of the claim, citing to <u>Balog v. Center Art Gallery-Hawaii, Inc.</u>, 745 F.Supp. 1556 (D. Haw. 1990). In <u>Balog</u>, the plaintiffs brought breach of express warranty claims against an art gallery, alleging that the defendant's representations about art pieces were false. <u>Id.</u> at 1558-59. The U.S. District Court of the District of Hawaii held that, although the plaintiffs had filed their claim more than four years after the sale of the art, their claims were not barred under HRS § 490:2-725 because, *inter alia*, the defendants had fraudulently concealed the facts giving rise to the claim. <u>Id.</u> at 1572-73. In particular, the defendant had repeatedly sent the plaintiffs certificates of authenticity and represented to them that their investments were continuing to appreciate in value, "effectively prevent[ing] the plaintiffs from discovering their cause of action within the applicable statute of limitations." <u>Id.</u> at 1573.

One of the cases that <u>Balog</u> relies upon is <u>Volk v. D.A. Davidson & Co.</u>, 816 F.2d 1406 (9th Cir. 1987), where the Ninth Circuit explained:

> In some cases, the conduct of a defendant will toll the statute of limitations under the doctrine of fraudulent concealment. The doctrine is properly invoked only if a plaintiff establishes "affirmative conduct upon the part of the defendant which would, under the circumstances of the case, lead a reasonable person to believe that he did not have a claim for relief." *Gibson v. United States*, 781 F.2d 1334, 1345, (9th Cir. 1986), *cert. denied*, 479 U.S. 1054, 107 S.Ct. 928, 93 L.Ed.2d 979 (1987) (civil rights case)

19

(quoting *Rutledge v. Boston Woven Hose & Rubber Co.*, 576 F.2d 248, 250 (9th Cir. 1978) (antitrust case)). [Plaintiffs] must demonstrate that they had neither actual nor constructive notice of the facts constituting their claims for relief. *Rutledge*, 576 F.2d at 250.

> To invoke the doctrine in the complaint, [plaintiffs] must plead with particularity the facts giving rise to the fraudulent concealment claim and must establish that they used due diligence in trying to uncover the facts. *Conerly v. Westinghouse Electric Corp.*, 623 F.2d 117, 120 (9th Cir. 1980); *Rutledge*, 576 F.2d at 250. [Defendants'] silence or passive conduct does not constitute fraudulent concealment. *Rutledge*, 576 F.2d at 250. Further, [plaintiffs'] mere ignorance of the cause of action does not, in itself, toll the statute. *Campbell*, 676 F.2d at 1127.

816 F.2d at 1415-16 (emphasis added). As noted by the Ninth Circuit in <u>Conerly v. Westinghouse Electric Corp.</u>, 623 F.2d 117 (9th Cir. 1980), to invoke fraudulent concealment, a plaintiff "must plead with particularity the circumstances surrounding the concealment *and* state facts showing his due diligence in trying to uncover the facts[.]" <u>Id.</u> at 120 (emphasis added) (citation omitted).

The First Amended Complaint does not invoke fraudulent concealment to toll the breach of implied warranty claim. Although there are some allegations related to the conspiracy claim that assert that the Defendants concealed information about the risks of DBCP products, even if we consider these allegations, there are no facts stated in the complaint as to the Six Plaintiffs' due diligence in trying to uncover the facts. Thus, even if we liberally construe the First Amended Complaint, the doctrine of fraudulent concealment is inapplicable to toll the statute of limitations for the implied warranty claim.

Given the above, even though a four-year statute of limitations applies to the breach of implied warranty claim, that claim was not timely asserted because it accrued in the mid-1980s.

## V.    Conclusion

Based on the foregoing, the Judgment entered by the Circuit Court of the First Circuit on July 28, 2010 is affirmed.

DATED:  Honolulu, Hawai'i, March 7, 2014.

On the briefs:

Scott M. Hendler
(HendlerLaw, P.C.)
Jonathan Massey
(Massey & Gail LLP)
Leslie S. Fukumoto
(Leslie S. Fukumoto, AAL, ALC)

for Plaintiffs-Appellants


Sidney K. Ayabe
Calvin E. Young
Steven L. Goto
(Ayabe, Chong, Nishimoto, Sia &
  Nakamura LLLP)
Michael L. Brem
(Schirrmeister Diaz-Arrastia Brem LLP)

for Defendant-Appellee
The Dow Chemical Company


Melvin M. Miyagi
Ross T. Shinyama
Angela T. Thompson
(Watanabe Ing LLP)

for Defendant-Appellee
Pineapple Growers Association of Hawaii


Judy A. Tanaka
Jason C. Zhao
(Paul Johnson Park & Niles)
D. Ferguson McNiel
(Vinson & Elkins, L.L.P.)

for Defendant-Appellee
Occidental Chemical Corporation

Presiding Judge

Associate Judge

Associate Judge

21

Wendell H. Fuji
Anthony F. Suetsugu
(Kobayashi, Sugita & Goda)
Robert E. Meadows
(King & Spalding LLP)
Lawrence P. Riff
(Steptoe & Johnson LLP)

for Defendant-Appellee Shell Oil Company


Melvin M. Miyagi
Ross T. Shinyama
Angela T. Thompson
(Watanabe Ing LLP)
Andrea E. Neuman
(Gibson Dunn & Crutcher LLP)

for Defendants-Appellees
Dole Food Company, Inc., Dole Fresh Fruit Company,
Standard Fruit Company, Standard Fruit and Steamship Company


Elise Owens Thorn
(Clay Chapman Iwamura Pulice & Nervell)
Boaz S. Morag
(Cleary Gottlieb Steen & Hamilton, LLP)

for Defendants-Appellees Del Monte Fresh Produce N.A., Inc.
and Del Monte Fresh Produce (Hawaii) Inc.


Richard C. Sutton, Jr.
(Sakai Iwanaga Sutton Law Group, AAL, LLLC)

for Defendant-Appellee
AMVAC Chemical Corporation